## A11A1991. MIMS v. THE STATE.
(723 SE2d 486)

DILLARD, Judge.

Following a jury trial, Christopher Mims was convicted of one count of aggravated battery and one count of aggravated assault. Mims appeals his convictions and the denial of his motion for new trial, arguing that the trial court erred in admitting the victim's prior consistent statement over his hearsay objection and in admitting a police officer's allegedly irrelevant testimony regarding the scope of the officer's investigation. For the reasons set forth infra, we affirm.

Viewed in the light most favorable to the jury's guilty verdict,[1] the evidence shows that late in the evening of May 6, 2008, Mims and his girlfriend, M. C., were in the parking lot of a local package store when they became embroiled in a heated argument over money. As the argument escalated, M. C. turned her back on Mims and began to walk away from him. But as she did, Mims struck her in the back of the head with a stick, which knocked her to the ground. With M. C.

---

[20] OCGA § 16-13-49 (d) (2).

[21] *Howard v. State of Ga.*, 223 Ga. App. 323 (477 SE2d 605) (1996).

[1] *See, e.g., Goolsby v. State*, 299 Ga. App. 330, 330-31 (682 SE2d 671) (2009); *see also Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

now lying face down on the ground, Mims continued striking her on the back of her head. And when M. C. attempted to turn over onto her back so that she could use her hands to defend herself, Mims began striking her in the face with his fists, breaking her jaw and knocking out several of her teeth in the process.

Shortly after Mims began his assault on M. C., a motorist who had driven by the scene flagged down a police officer—who was on patrol several blocks away—and informed him that she had just witnessed a male beating a female in the package store parking lot. When the officer arrived at the scene a few minutes later, Mims had already fled, but the officer found M. C. lying on the ground nearly unconscious and bleeding badly from the multiple blows to her face and head. As the officer rendered aid, a second officer arrived on the scene, and M. C. told both of them that Mims was the person who had assaulted her. Consequently, the second officer went to Mims's residence, and after finding Mims with what appeared to be blood on his shirt, pants, and shoes, arrested him for the assault on M. C.

Thereafter, Mims was indicted on one count of aggravated battery[2] and one count of aggravated assault.[3] During Mims's trial, M. C. testified about the assault, and the two responding police officers testified regarding their investigation of the matter. Additionally, the State introduced and played an audio recording of a telephone call that Mims made to M. C. while Mims was incarcerated in the local detention center[4] and M. C. was still in the hospital being treated for her injuries. In that phone call, Mims complained to M. C. about being arrested on aggravated-assault charges, and he angrily suggested that M. C. should have blamed the assault on someone else.

At the conclusion of Mims's trial, the jury found him guilty on both counts.[5] Subsequently, Mims filed a motion for new trial. And after both Mims and the State agreed that an evidentiary hearing on the matter was unnecessary, the trial court denied Mims's motion for new trial. This appeal follows.

At the outset, we note that "[a]s a general rule, admission of evidence is a matter resting within the sound discretion of the trial court, and appellate courts will not disturb the exercise of that discretion absent evidence of its abuse."[6] With this guiding principle in mind, we will now address Mims's claims of error.

---

[2] *See* OCGA § 16-5-24 (a).

[3] *See* OCGA § 16-5-21 (a) (2).

[4] Prior to the introduction of the audio recording, a sheriff's deputy whose job entailed that of custodian of the local detention center's records testified that all telephone calls placed by inmates are recorded.

[5] The trial court merged those convictions for sentencing purposes.

[6] *Smith v. State*, 302 Ga. App. 128, 130 (1) (690 SE2d 449) (2010) (punctuation omitted).

1. Mims contends that the trial court erred in admitting a police officer's testimony regarding M. C.'s prior consistent statement identifying Mims as her attacker despite Mims's hearsay objection. We disagree.

It is well established that a witness's prior consistent statement is admissible only where: "(1) the veracity of a witness's trial testimony has been placed in issue at trial; (2) the witness is present at trial; and (3) the witness is available for cross-examination."[7] And a witness's veracity is placed in issue, so as to permit the introduction of a prior consistent statement, "if affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross-examination."[8] But even then, "to be admissible to refute the allegation of recent fabrication, improper influence, or improper motive, the prior statement must predate the alleged fabrication, influence, or motive."[9]

In the case sub judice, M. C. testified on direct examination that Mims attacked her on the night in question. Nevertheless, during Mims's cross-examination of M. C., defense counsel was able to elicit testimony from M. C. in which she admitted to consuming a quart of beer and a half-pint of vodka just prior to the assault, that she never saw Mims carrying a stick, and that she did not see the first blow to the back of her head because it came from behind her. And although M. C. maintained that Mims was the person who attacked her, defense counsel attempted to elicit a concession from M. C. that it was possible someone else could have been responsible for her injuries.

Shortly thereafter, during the direct examination of the police officer who first responded to the incident, the State's prosecutor asked the officer what M. C. told him when he arrived on the scene. But before the officer could respond, Mims's counsel objected that the officer's answer would constitute hearsay. In response, the State's prosecutor asserted that M. C.'s veracity as to the identity of her attacker had been challenged earlier during cross-examination, and argued that, as a result, M. C.'s prior consistent statement was admissible. The trial court agreed, and the officer then confirmed that upon his arrival at the scene, M. C. immediately identified Mims as her attacker.

Mims now argues that the trial court erred in admitting M. C.'s prior consistent statement because his trial counsel's cross-examination of M. C. did not place her veracity at issue and, alternatively, even if it did, her statement did not predate any recent

---

[7] *Hall v. State*, 287 Ga. 755, 758 (3) (699 SE2d 321) (2010) (punctuation omitted); *see Woodard v. State*, 269 Ga. 317, 320 (2) (496 SE2d 896) (1998).

[8] *Hall*, 287 Ga. at 758 (3) (punctuation omitted).

[9] *Duggan v. State*, 285 Ga. 363, 366 (2) (677 SE2d 92) (2009) (punctuation omitted).

fabrication or improper motive. We disagree.

Although Mims's trial counsel did not directly accuse M. C. of lying, her veracity was certainly challenged by questions eliciting the fact that she had been drinking heavily just prior to the assault and that she did not actually see the weapon or the first blow. Thus, at the very least, Mims's cross-examination of M. C. strongly implied that her direct testimony constituted a recent fabrication.[10] Additionally, it is undisputed that M. C.'s statement to the responding officer pre-dated her allegedly fabricated trial testimony.[11] And under these circumstances, we conclude that the trial court did not abuse its discretion in allowing the State to introduce M. C.'s prior consistent statement.[12]

Moreover, even assuming arguendo that M. C.'s identification of Mims as her assailant to the responding officer was not properly admitted as a prior consistent statement, her statement was made within minutes of the violent assault and while she was still suffering its effects. Her statement, therefore, was also admissible as part of the res gestae of the event.[13] Thus, the trial court would not have abused its discretion in allowing M. C.'s statement into evidence on this alternative ground.[14]

2. Mims also contends that the trial court erred in allowing one of the investigating police officers to testify as to why the alleged blood stains on Mims's clothing and shoes were not forensically analyzed, arguing that such testimony was irrelevant. This contention is likewise without merit.

First, we note that unless the potential for prejudice substantially outweighs probative value, "Georgia law favors the admission of relevant evidence, no matter how slight its probative value."[15] And

---

[10] See Hall, 287 Ga. at 758 (3) (holding that defendant's questions eliciting inconsistencies between child's direct testimony and statements she previously made to her teacher were an attack on child's veracity).

[11] See Brown v. State, 310 Ga. App. 835, 838 (1) (b) (714 SE2d 395) (2011) (noting that victim's prior consistent statement to nurse undisputedly predated her allegedly fabricated trial testimony).

[12] See Hall, 287 Ga. at 758 (3); Brown, 310 Ga. App. at 838 (1) (b).

[13] See Woods v. State, 255 Ga. App. 265, 268 (3) (564 SE2d 853) (2002) (holding that eyewitness's prior consistent statements were admissible because his veracity was attacked at trial, and, because statements were made within minutes of the violent incident and while the eyewitness was still upset, were also admissible as part of the res gestae). See generally OCGA § 24-3-3 ("Declarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae.").

[14] See Wood v. State, 239 Ga. App. 707, 709 (2) (522 SE2d 51) (1999) (holding that although the proper basis for admitting evidence was not the basis expressed by the trial court, a trial court's evidentiary ruling must be affirmed if it is right for any reason).

[15] Scales v. State, 310 Ga. App. 48, 51 (2) (a) (i) (712 SE2d 555) (2011) (punctuation omitted).

evidence is relevant "if it tends to prove or to disprove a material fact at issue, and every act or circumstance which serves to explain or throw light upon a material issue is relevant."[16] Indeed, even where the relevancy or competency is doubtful, "the evidence should be admitted, and its weight left to the determination of the jury."[17]

And here, during the State's case, one of the investigating officers testified that the clothing and shoes that Mims was wearing on the night he was arrested appeared to have blood stains on them. On cross-examination, Mims's trial counsel asked the officer if the stains had ever been forensically analyzed. The officer responded that no such analysis was conducted, and therefore, he could not testify with any scientific certainty that the stains were, in fact, blood. Immediately thereafter, the State's prosecutor asked the officer to explain why forensic testing was not requested. Mims's trial counsel objected on the ground that the question required expert testimony. And after a brief voir dire, the trial court ruled that the officer could testify as an expert in police investigations but could not testify as to whether the stains on Mims's clothes were, in fact, blood. Unsatisfied with the court's ruling, Mims's trial counsel argued that any explanation by the officer as to why the alleged blood stains were not analyzed was irrelevant. However, the trial court disagreed, and thereafter, the officer testified that blood is usually analyzed in order to "confirm the identity of somebody when you are looking . . .—trying to figure out who committed the crime."

On appeal, Mims again argues that the police officer's testimony should have been excluded as irrelevant, but we disagree. During cross-examination, Mims elicited the officer's admission that the alleged blood stains on Mims's clothing and shoes had not been forensically tested. Thus, the officer's explanation as to why such testing was not done—after the failure to test had been called into question by Mims—was certainly relevant to explain the officer's conduct.[18] Accordingly, the trial court did not abuse its discretion in determining that the officer's testimony was relevant and admissible.

*Judgment affirmed. Mikell, P. J., and Boggs, J., concur.*

DECIDED FEBRUARY 16, 2012.

*Kevin C. Armstrong*, for appellant.

---

[16] *Id.*

[17] *Ortiz v. State*, 295 Ga. App. 546, 549 (2) (672 SE2d 507) (2009) (punctuation omitted).

[18] *See Holmes v. State*, 266 Ga. 530, 531 (2) (468 SE2d 357) (1996).

*Gregory W. Edwards, District Attorney, Matthew Breedon, Assistant District Attorney*, for appellee.